IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMY ELIZABETH L.[1]

    Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 1:20-cv-01638-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Amy Elizabeth L. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income. Full consent to magistrate jurisdiction was entered on October 4, 2020 (Dkt. #6). For the reasons provided below, the Commissioner's decision is AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

[2] The parties have consented to having a United States Magistrate Judge conduct any and all proceedings in this case pursuant to Fed. R. Civ. P. 73(b).

1 - Opinion and Order

## BACKGROUND

Plaintiff is a 47-year-old woman who alleges she is unable to work due to Digeorge syndrome (a chromosomal disorder), PTSD, anxiety, depression, hallux valgus deformity, plantar calcaneal spurs, neuropathy, obesity, left knee degenerative joint disease and meniscal tear, restrictive lung disease, obstructive sleep apnea, left lateral epicondylitis, and chronic pain syndrome. Tr. 25. Plaintiff filed an application for Supplemental Security Income on October 24, 2017, alleging disability beginning February 1, 2016. Tr. 153. Plaintiff's claim was denied initially and upon reconsideration. Tr. 96, 103. Plaintiff requested a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2019. Tr. 39-59.

The ALJ issued an unfavorable decision on November 22, 2019. Tr. 20-38. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such

work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

3 - Opinion and Order

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. The claimant engaged in substantial gainful activity from the alleged onset date through December 31, 2017... The remainder of this decision will address the period from January 2018 through the present, when the claimant was not engaged in substantial gainful activity. Tr. 25.

2. The claimant has the following severe impairments: Digeorge syndrome; PTSD; anxiety; depression; hallux valgus deformity; plantar calcaneal spurs; neuropathy; obesity; left knee degenerative joint disease and meniscal tear; restrictive lung disease; obstructive sleep apnea; left lateral epicondylitis; and chronic pain syndrome. Tr. 25.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 26.

4. The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for approximately 2 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. The claimant cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps. The claimant can occasionally balance, stoop, and crouch, but cannot kneel and crawl. She can

frequently reach in all directions with her left upper extremity and frequently handle and finger bilaterally. The claimant can understand, remember and carry out simple, routine and repetitive instructions that can be learned in 30 days or less. Instructions should include demonstration. The claimant is limited to isolated work, which involves no public contact and occasional direct coworker and supervisor interaction and no group tasks (there is no limit on incidental coworker and supervisor contact). The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, occasional simple, work-related decision-making and no work on a conveyor belt. The claimant should have only occasional exposure to atmospheric conditions and no exposure to moving mechanical parts and high, unprotected place hazards, as rated by the Dictionary of Occupational Titles (DOT). Tr. 28.

5. The claimant is unable to perform any past relevant work. Tr. 32.

6. The claimant was born September 8, 1974, and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age. Tr. 33.

7. The claimant has at least a high school education and is able to communicate in English. Tr. 33.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. 33.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 33.

10. The claimant has not been under a disability, as defined in the Social Security Act, from October 24, 2017, the date the application was filed. Tr. 34.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents a single issue for review: whether the ALJ erred at step five by relying on testimony from the vocational expert to support finding that Plaintiff could perform work that exists in significant numbers in the national economy. Plaintiff stipulates to the ALJ's findings at steps one through four. Plf.'s Brief at 4. The Court concludes that remand is not warranted in this case.

At step five of the sequential disability analysis, the ALJ is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy" that could be done by an individual with the same RFC, age, education, and work experience as the claimant. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The ALJ can satisfy this burden by taking the testimony of a vocational expert ("VE"). *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 578 (9th Cir. 1988). The ALJ may pose detailed hypothetical questions to the VE to establish what jobs, if any, the claimant can do. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (quoting *Tackett*, 180 F.3d at 1101). The Ninth Circuit has not created "a bright-line rule for what constitutes a 'significant number' of jobs" in the national economy. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (amend. Nov. 14, 2012). While the Eighth Circuit has found

7 - Opinion and Order

10,000 jobs in the national economy to be a significant number in *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), the Ninth Circuit has yet to endorse a number below 25,000. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014).

"[T]he Social Security Administration relies primarily on the *Dictionary of Occupational Titles* ['DOT'] for information about the requirements of work in the national economy," and a VE's testimony generally should be consistent with it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). When there is a conflict between the DOT and a VE's testimony, neither automatically prevails over the other. *Id.* The ALJ must determine whether a conflict exists and, if so, determine whether the expert's explanation for the conflict is reasonable and whether there is a basis for relying on the expert rather than the DOT. *Id.* In *Shaibi v. Berryhill*, the Ninth Circuit held that a claimant's challenge to the vocational expert's numbers must be brought during administrative proceedings before the agency. 883 F.3d 1102, 1109 (9th Cir. 2017). The ALJ should "permit the claimant to submit supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own." *Id.* However, if the ALJ declines to allow the claimant to submit contrasting evidence, a claimant may raise new evidence casting doubt on a VE's evidence before the Appeals Council, provided that evidence is both relevant and "relates to the period on or before the ALJ's decision." *Id.*

In this case, the ALJ relied on testimony from a VE to determine that Plaintiff would be capable of performing the representative occupations of electronics worker (DOT 726.687-010), finisher, hand (DOT 731.587-010), and buckle inspector (DOT 734.687-026). Tr. 34, 55. The

8 - Opinion and Order

VE testified that electronics worker represented 52,000 jobs in the national economy; hand represented 62,000 jobs; and buckle inspector represented 60,000 jobs. Tr. 55. At the hearing, Plaintiff's attorney asked the VE how he obtained these numbers. The VE testified that he got the numbers from the Department of Labor through the "Job Browser Plus" and "O*NET." Tr. 57. When the ALJ asked whether the VE manipulates the numbers or does his "own work in regard to these numbers," the VE responded "Exactly, yes" and that he relied on his education and 35 years of experience. Tr. 57-58. The relevant portion of the hearing transcript is as follows:

> Q If you could just tell us how you obtain your numbers, your national numbers?
>
> A I get the numbers from -- they're Department of Labor numbers. I go through the Job Browser Plus.
>
> ATTY: Thank you.
>
> ALJ: Job Browser Pro perhaps?
>
> VE: That one as well.
>
> ATTY: That's what I thought you meant then.
>
> BY ADMINISTRATIVE LAW JUDGE:
> Q And do you just accept those at face value or do you also compare them to other information that you have?
>
> A These are accepted numbers. On these particular jobs, they're an accumulation of O*NET numbers, jobs in similar statuses and what I've done is gone through and researched each particular job that would fit the hypothetical and then added them altogether to come up with the figure I got.
>
> Q So you do manipulate? It's just not your -- you're actually doing your own work in regard to these numbers?
>
> A Exactly, yes.

9 - Opinion and Order

> ALJ: All right. Mr. Lucas, some of the things you were asked about today are not directly addressed by the *DOT,* such as the exact [INAUDIBLE], sitting/standing, the breakdown of types of climbing, also the work and all that I described that low stress work and in the way that I defined that, instructions by demonstration, the ability to elevate the legs, absenteeism. In regard to things like that where the *DOT* is not directly on point, what did you rely upon in giving your opinion?
>
> VE: Your Honor, that would be my education, and 35 plus years doing this type of work.

Tr. 58. Following the hearing and the ALJ's issuance of an unfavorable decision, Plaintiff submitted to the Appeals Council new evidence consisting of her attorney's online search, raw data from Job Browser Pro, and the attorney's lay interpretation of that data.[3] Tr. 4, 249. Plaintiff submitted that same raw data to this Court and argues that the evidence shows that the VE claimed more jobs in each of the three occupations than could possibly exist. According to Plaintiff, Job Browser Pro shows that there would be only 1,045 jobs in the national economy that Plaintiff could perform, not 174,000 jobs as the VE testified.

However, courts in this circuit have consistently found that the VE, the ALJ, or the Appeals Council—as opposed to the federal court—is in the optimal position to interpret raw statistical data. *See Kremlingson v. Saul,* 800 F.App'x 531, 532-33 (9th Cir. 2020) (rejecting challenge regarding the number of jobs available in the relevant occupation, noting that plaintiff failed to support that challenge with any expert analysis or declaration); *Munroe v. Colvin,* 2014 U.S. Dist. LEXIS 164252 at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument that vocational expert's estimated jobs should have been reduced; court observed that the plaintiff

---

[3] The Commissioner should have added the documents Plaintiff attached to her Opening Brief at ECF No. 12-2, 12-3, and 12-4 to the certified administrative record upon Plaintiff's appeal to federal court. However, the Court finds no prejudice as a result of this omission because the Court was able to review the submissions and considered them as part of the record. *see McLeod v. Astrue,* 649 F.3d 881, 887 (9th Cir. 2011) (explaining that to be harmful, an error must result in at least "a substantial likelihood of prejudice").

was not a vocational expert and there was no indication she was qualified to assess the data); *see also Colbert v. Berryhill*, 2018 U.S. Dist. LEXIS 37635 at *5 (C.D. Cal. Mar. 7, 2018) (determining ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a data source listed in the regulations, and the data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 U.S. Dist. LEXIS 55929 at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.").

Like in these cases listed above, Plaintiff failed to support her challenge to the VE's testimony with any expert analysis or declaration. The Court will not credit Plaintiff's lay interpretation of raw statistical data over the expertise of the VE. Plaintiff's data and analysis here are insufficient to preclude the agency from relying on the VE's testimony. Therefore, reversal on this issue is not warranted.

## ORDER

For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED and DATED this __30__ day of June, 2022.

MARK D. CLARKE
United States Magistrate Judge